UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANNIE COBURN,

    Plaintiff,
v.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

CIVIL ACTION NO. 08-11397
DISTRICT JUDGE PATRICK J. DUGGAN
MAGISTRATE JUDGE DONALD A. SCHEER

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

RECOMMENDATION: Plaintiff's Motion for Summary Judgment should be DENIED, and that of Defendant GRANTED, as there was substantial evidence on the record that claimant retained the residual functional capacity for a limited range of light work.

\* \* \*

Plaintiff filed an application for Social Security disability income benefits on December 5, 2003, alleging that she had been disabled and unable to work since April 8, 2003, at age 49, due to hypertension and severe back, knee, hand and left shoulder pain. Benefits were denied by the Social Security Administration (SSA). A requested de novo hearing was held on March 14, 2007, before Administrative Law Judge (ALJ) Edward Steinman. The ALJ subsequently found that the claimant was not entitled to disability benefits because she retained the ability to perform a limited range of light work. The Law Judge restricted claimant from jobs that exposed her to vibrating machinery, overhead reaching with the left arm, frequent climbing of ladders or scaffolds and repetitive fingering (including keyboarding). The Appeals Council declined to review that decision and Plaintiff commenced the instant action for judicial review of the denial of benefits. The parties have

filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

Claimant was 52 years old at the time of the administrative hearing. She had been graduated from high school, and had been employed by General Motors as a press operator and material handler (TR 86, 89). As a press operator, Plaintiff stood for a majority of the workday. She constantly had to handle, grip and manipulate large and small objects. She had to lift about 50 pounds on a regular basis (TR 90). Claimant stopped working in May 2003, due to multiple joint pain[1] (TR 294).

Plaintiff testified that she remained disabled as a result of arthritic knee and low back pain, bilateral carpal tunnel syndrome, cubital tunnel syndrome in her elbows and a swollen neck (TR 294). She alleged daily pain in her knees, neck, back, elbows and wrists (TR 295-298). Claimant had difficulty walking, bending, and squatting due to the pain (TR 296). Plaintiff explained she wore wrist splints at home, but she did not wear them at her hearing (TR 296). Plaintiff indicated that her right thumb was numb "all the time", but that pain medications made her sleepy (TR 297, 300). Plaintiff estimated that she could lift less than 10 pounds, carry 5 pounds, sit for 15 to 20 minutes at a time, stand for 15 minutes, and walk a half block. She also had difficulty with postural activities, and could use her hands for approximately 45 minutes before needing to stop (TR 301-02). Plaintiff watched television and tried to clean her home during the day (TR. 304).

A Vocational Expert, Mark Remas, classified Plaintiff's past work as medium, unskilled and semi-skilled activity (TR 305). The witness testified that there would not be

---

[1] At the time of the hearing, Plaintiff was receiving weekly worker's compensation benefits and a monthly pension from General Motors (TR 291-292)

any jobs for claimant to perform if her testimony were fully accepted[2] (TR 321). If she were capable of light work, however, there were numerous unskilled inspection, survey and attendant jobs that she could still perform with minimal vocational adjustment (TR 320). These simple, routine jobs did not expose workers to vibrating machinery, and did not require overhead reaching with the left arm (TR 319).

A medical expert, Dr. Michael Gurvey, summarized the medical record, and concluded that Plaintiff had degenerative arthritis affecting her back, knees and hands, as well as a left shoulder rotator cuff impingement (TR 305). The doctor testified that Plaintiff's back, knee, hand and shoulder problems were not severe enough to meet or equal the Listing of Impairments (TR 307). Dr. Gurvey opined that Plaintiff remained capable of light work activity, but he restricted her from jobs requiring the use of vibrating tools or repetitive use of the left shoulder (TR 308).

LAW JUDGE'S DETERMINATION

The Administrative Law Judge found that Plaintiff was impaired as a result of a herniated disc of the lumbar spine, degenerative cervical disc disease, lumbar and cervical radiculopathy, bilateral knee arthritis, bilateral carpal tunnel syndrome and a left shoulder rotator cuff impingement, but that she did not have an impairment or combination of impairments severe enough to meet or equal the Listing of Impairments. The ALJ recognized that claimant's joint pain prevented her from working at jobs requiring overhead reaching with her left arm, or involving frequent kneeling, crawling, squatting, stooping or climbing. The Law Judge also restricted claimant from jobs that would expose her to

---

[2]The witness testified that all of claimant's past relevant work was beyond her claimed exertional abilities (TR 318).

vibrating machinery or extensive finger movement. Nevertheless, the Law Judge found that Plaintiff retained the residual functional capacity to perform a significant number of light jobs, within those limitations, as identified by the Vocational Expert.

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is more than a scintilla but less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Kirk v. Secretary, 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). This court does not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. See Brainard v. Secretary, 889 F.2d 679, 681 (6th Cir. 1989); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. Kirk, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if even substantial evidence also supports the opposite conclusion, Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc), Casey v. Secretary, 987 F.2d 1230 (6th Cir. 1993), and even if the reviewing court would decide the matter differently, Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

Plaintiff maintains that substantial evidence does not exist on the record that she remains capable of performing a limited range of light work activity. She also argues that

the ALJ improperly evaluated her credibility, and did not take into consideration all of her functional limitations. Defendant counters that the claimant retains the residual functional capacity for a reduced range of light work because the objective clinical evidence of record did not confirm the disabling nature of her pain.

DISCUSSION AND ANALYSIS

Substantial evidence existed on the record supporting the Commissioner's conclusion that Plaintiff retained the residual functional capacity for a restricted range of light work. The medical evidence, as a whole, failed to provide objective support for Plaintiff's allegations of severe and totally disabling joint pain.

The medical record contained little objective medical basis for crediting Plaintiff's complaints of disabling symptoms stemming from her back, hand, knee and shoulder pain. Following arthroscopic left knee surgery in January 2004 (TR 165, 167), she reportedly felt "quite a bit better" (TR 180). A consultative evaluation by Dr. Samiullah Sayyid on February 24, 2004, at the request of the Commissioner, was essentially unremarkable. Plaintiff had full ranges of joint motion, except in the left knee and diminished movement of the spine. Claimant enjoyed good hand movement, was able to walk normally, and did not have any motor, sensory or reflex abnormalities. Dr. Sayyid determined that Plaintiff could stand, bend, stoop and lift, but restricted her from lifting more than ten pounds with her right hand (TR 171-175).

Right hand pain and numbness "fully resolved" after claimant underwent right carpal tunnel release surgery in May 2004 (TR 212). Dr. Jeffrey Levin, a treating physician, authorized Plaintiff to return to work on May 10, 2004, but limited her to lifting no more than five pounds and precluded repetitive pushing, pulling, bending, stooping. Dr. Levin also

suggested that the claimant avoid vibratory tools (TR 200). The claimant was only able to return work for a short time before experiencing hand and knee pain, but medications helped relieve her discomfort (TR 183-186).

Plaintiff received conservative treatment, including physical therapy and cortisone injections, for multiple joint pain through August 2005 (TR 213-214). Dr. Anthony de Bari evaluated claimant in December 2005, at the request of her treating physician, and reported that she was "doing quite well overall" (TR 225). During a follow-up examination in March 2006, Dr. de Bari stated that medications injected in claimant's knees had helped relieve her pain (Tr 224). Plaintiff continued to complain of back and left shoulder pain, and X-rays of both joints showed marked degenerative changes[3] (TR 221-222). Dr. Gurvey, the medical advisor, testified that the claimant remained capable of performing light work activity, despite her joint pain, as long as she did not lift anything higher than shoulder level and avoided frequent climbing, crawling and kneeling (TR 307-308).

When evaluating Plaintiff's residual functional capacity, the Law Judge also took into consideration the opinion of a state agency physician[4], who concluded that the claimant could perform light work activity (TR 132-138). In light of that evidence, the Commissioner could reasonably conclude that Plaintiff's subjective complaints of persistent, severe, totally disabling symptoms stemming from joint pain were not fully credible.

---

[3]In cases where, as here, the Appeals Council declines to review the ALJ's decision, judicial review is limited to the evidence that was part of the record before the Law Judge. Cotton v. Sullivan, 2 F.3rd 692 (6th Cir. 1993); Casey v. Secretary, 987 F.2d 1230, 1233 (6th Cir. 1993); Wyatt v. Secretary, 974 F.2d 680, 685 (6th Cir. 1993). Consequently, the evidence Plaintiff submitted to the Appeals Council (TR 229-282) was not considered by the undersigned.

[4]Under the regulations, ALJs "must consider findings of State agency medical and psychological consultants," but ALJs "are not bound by any findings made by State agency medical or psychological consultants." 20 C.F.R. § 404.1527(f)(2)(I) (2008).

Contrary to Plaintiff's assertion, there was no objective medical evidence suggesting that she suffered severe side effects from pain medications, or that she needed to rest frequently throughout the day. The ALJ took into consideration claimant's objectively proven functional limitations by restricting her to simple, routine jobs that allowed her to change positions every one to two hours. The Law Judge further restricted claimant from jobs that required frequent crouching, crawling, stooping, climbing or lifting above shoulder level (TR 21).

Plaintiff relies heavily upon the fact that Dr. Levin opined on May 2, 2005, that she was unable to return to work (TR 202). It is well settled that opinions of treating physicians should be given greater weight than those of one-time examining doctors retained by the government. Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). However, the opinion of a treating physician is entitled to deference only if his clinical findings are uncontradicted by substantial medical or other evidence, and if the opinion is based on detailed, clinical, diagnostic evidence. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985). Since Dr. Levin offered little objective evidence to support his May 2005, statement of disability[5], his opinion need not have been given any special weight. Miller v. Secretary, 843 F.2d 221, 224 (6th Cir. 1988). Under these circumstances, the totality of the evidence must be considered. Landsaw v. Secretary, 803 F.2d 211, 213 (6th Cir. 1986).

---

[5]The ALJ rejected the doctor's disability opinion, setting forth persuasive reasons for doing so (TR 23). The ALJ expressed concern about the lack of medical documentation to support the opinion. As the Law Judge observed, the doctor's disability opinion was inconsistent with his earlier clinical findings indicating that the claimant had almost normal strength, did not suffer any neurological deficits and had a normal gait (TR 23, 196). Dr. Levin's disability opinion was also inconsistent with the reports from Drs. Sayyid and de Bari, whose clinical findings were rather benign (TR 23, 175, 225). Indeed, it appears the doctor's opinion was primarily based on Plaintiff's subjective complaints, rather than the objective medical evidence.

It is the rare case, the exception, in which every piece of evidence points incontrovertibly toward a decision to deny benefits. There was evidence in the record which, taken in isolation, might suggest that the Plaintiff was totally disabled and that her testimony was fully credible. However, special deference is owed to the credibility findings of the ALJ, who was the only one who had the opportunity to observe the demeanor of the witness, evaluate what was said and how it was said, and to consider how that testimony fit in with the rest of the medical evidence. Such observation is invaluable and should not be discarded lightly. Beavers v. Secretary, 577 F.2d 383 (6th Cir. 1978). See also Williamson v. Secretary, 796 F.2d 146, 150 (6th Cir. 1986).

By establishing that she could not return to her past relevant work, the Plaintiff here effectively shifted to the Commissioner the burden of proving that she had the vocational qualifications to perform alternative jobs in the economy, notwithstanding her various impairments. The Commissioner, however, met her burden of proving the existence of jobs which accommodated claimant's known restrictions. In response to a hypothetical question that took into consideration claimant's educational and vocational background, along with her significant impairments[6], the Vocational Expert testified that there were numerous unskilled inspection, survey and attendant jobs that she could still perform with minimal vocational adjustment (TR 320). These simple, routine jobs did not expose workers to

---

[6] The Administrative Law Judge's hypothetical questions to the Vocational Expert (VE) accurately described Plaintiff's moderate limitations caused by her joint pain. The ALJ reasonably determined that claimant's on-going joint discomfort limited her to simple, unskilled, routine type jobs (TR 21). The Sixth Circuit has held that hypothetical questions to experts are not required to included lists of claimant's medical conditions. Webb v. Commissioner, 368 F.3d 629, 633 (6th Cir. 2004). Under these circumstances, the ALJ's hypothetical question accurately portrayed Plaintiff's impairments.

vibrating machinery, and did not require overhead reaching with the left arm (TR 319). Given the objective clinical findings of the examining physicians of record during the relevant period, substantial evidence existed on the record that Plaintiff retained the residual functional capacity for a restricted range of light work activity.

In sum, the Commissioner's decision to deny benefits was within the range of discretion allowed by law and there is simply insufficient evidence for the undersigned to find otherwise. Accordingly, Plaintiff's Motion for Summary Judgment should be denied, that of Defendant granted and the instant Complaint dismissed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. United States v. Walters, 638 F.2d 947 (6th Cir. 1981), Thomas v. Arn, 474 U.S. 140 (1985), Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987), Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to Rule 72.1 (d)(2) of the Local Rules of the United States District Court for the Eastern District of Michigan, a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                              s/Donald A. Scheer
                                              DONALD A. SCHEER
DATED: September 30, 2008          UNITED STATES MAGISTRATE JUDGE

**CERTIFICATE OF SERVICE**

       I hereby certify on September 30, 2008 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on September 30, 2008. **None.**

                                            s/Michael E. Lang
                                            Deputy Clerk to
                                            Magistrate Judge Donald A. Scheer
                                            (313) 234-5217